## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

MAURICE PARKER,

     Plaintiff,

       v.                                                   **Civil Action No. 15-926 (JDB)**

HARRY HOGLANDER, Chairman,
National Mediation Board,

     Defendant.

### MEMORANDUM OPINION

The National Mediation Board, a federal agency that mediates and arbitrates labor-management disputes in the airline and railroad industries, selected plaintiff Maurice Parker and two other men for jobs as mediators. Several months later, however, the Board rescinded Parker's offer, claiming that he had failed to accept the terms of the offer—in particular, the start date—by the deadline the Board had set. African American and aged 64 at the time of these events, Parker believes the real reason his offer was rescinded was race or age discrimination, and therefore filed this lawsuit. The Board has moved for summary judgment before discovery, contending that the investigation record compiled by its Equal Employment Opportunity Office conclusively shows that Parker's offer was withdrawn for a non-discriminatory reason. But summary judgment for the Board at this early juncture is unwarranted. On the present record, a reasonable jury could conclude that Parker's conduct was not meaningfully different from that of Walter Darr, a younger, white man whose offer was not rescinded when he sought a later start date. Given the apparent disparate treatment of Parker and Darr, a reasonable jury could conclude on this record that the Board intentionally discriminated against Parker. The case will therefore proceed to discovery.

## **BACKGROUND**

In March 2010 the National Mediation Board posted an announcement that it was seeking to hire mediators with experience in the airline industry.  After initially deciding not to select anyone for the opening, the Board reconsidered.  On July 13, 2010, it notified plaintiff Maurice Parker and two other men that they had been selected for mediator positions.  Parker's selection was complicated somewhat, however, by the fact that he was already a federal retiree receiving an annuity; to receive both that annuity and a salary from the Board would require special approval from the Office of Personnel Management.  Parker nonetheless immediately signed and submitted a "Statement of Acceptance" of the offer, in which he acknowledged that if OPM did not provide its approval, his annuity would be reduced by his Board salary.

On September 1, 2010, OPM informed the Board that it would not approve dual compensation for Parker.  The next day Board employee Samantha Williams contacted Parker and told him of OPM's decision.  Williams told Parker that he had until September 16, 2010, to decide whether to accept the position.  Parker sought a start date of November 1, a request that Williams said she would transmit to the Board.  On September 14 Williams advised Parker that the Board had denied his request for a November 1 start date, and had instead set a start date of October 4.

Parker then called Williams on September 16, the day by which the Board had told Parker to accept or decline the position.  Precisely what was said in that conversation is a matter of some dispute.  All agree that Parker reiterated his desire to push the start date to November 1, and that Williams told him to place his request in writing to be forwarded to the Board's Chief of Staff, Daniel Rainey.  Parker says that he nonetheless also made clear during the call that he accepted the position.  But in the Board's view Parker did not accept the position.

Returning to undisputed matters, the next morning, September 17, Parker sent Williams an email that read: "Per our conversation, I am looking forward to beginning my position as a Mediator (Airline) with the agency.  I have asked for a November 1, 2010 start date in order to address personal and business affairs before starting the position.  Please forward my request to the Chief of Staff [Rainey] or appropriate authority for a final decision on my request as soon as possible."  Report of Investigation (ROI) Ex. F6f, at 85.[1]

Later that day Rainey sent Parker a letter rescinding the job offer.  Rainey explained that Parker had failed to accept the job by the September 16 deadline.  "We did not receive a response by the deadline, and the only response received to date has been an email dated September 17, 2010 at 10:21 a.m., in which you did not accept the terms of the offer and you again requested a November 1, 2010 start date, even though you had already been informed that the November start date was not acceptable."  ROI Ex. F6g, at 87.

Parker subsequently filed a formal complaint with the Board's Office of Equal Employment Opportunity, alleging that the withdrawal of his offer was based on race or age.  The EEO Office investigated the matter but concluded that Parker had not been subjected to race or age discrimination.  Parker then timely filed this civil action.  His complaint alleges that the withdrawal of the job offer was the product of race or age discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.  Compl. [ECF No. 1] ¶¶ 15–18.  (Title VII does not in fact prohibit age discrimination, but the Age Discrimination in Employment Act of 1967 (ADEA) does, 29 U.S.C. § 621 et seq., and Parker's failure to cite the correct statute in his complaint is of no moment, see Johnson v. City of Shelby, 135 S. Ct. 346 (2014) (per

---

[1] The Report of Investigation (ROI) [ECF No. 11-3] contains materials assembled during the investigation by the Board's Equal Employment Opportunity Office.  The Court's citations will provide the exhibit number, followed by the page number generated by the ECF system.

curiam).)  The complaint further alleges that the Board violated Parker's civil rights in contravention of 42 U.S.C. § 1983, breached an implied or express contract, and intentionally or negligently inflicted emotional distress on Parker.  Compl. ¶¶ 19–43.

In response to Parker's complaint, the Board has filed a motion to dismiss or in the alternative for summary judgment.  The Court construes this motion as seeking dismissal of Parker's non-Title VII and non-ADEA claims—on the theory that those statutes provide the sole remedy for the discrimination alleged—and summary judgment on the Title VII and ADEA claims.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a plaintiff's complaint.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Although a court must accept the complaint's factual allegations as true, it is "not bound to accept as true a legal conclusion couched as a factual allegation."  Twombly, 550 U.S. at 555 (internal quotation marks omitted).

A motion for summary judgment under Rule 56 will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In making this determination, a court must view the facts in the light most favorable to the non-movant and draw all justifiable inferences in his favor.  Id. at 255.

## DISCUSSION

The Court can first quickly deal with Parker's non-Title VII and non-ADEA claims (<u>i.e.</u>, Counts II through VI of his complaint). Title VII and the ADEA provide the exclusive remedies for claims of race and age discrimination in federal employment. <u>Brown v. Gen. Servs. Admin.</u>, 425 U.S. 820, 835 (1976) (Title VII); <u>Chennareddy v. Bowsher</u>, 935 F.2d 315, 318 (D.C. Cir. 1991) (ADEA). The Board argues that all of Parker's non-Title VII and non-ADEA claims are premised on his having suffered race or age discrimination and are therefore foreclosed by this principle of exclusivity. Whether or not Parker <u>could</u> have made a convincing counterargument, he hasn't even tried. His memorandum in opposition does not so much as mention these other claims, let alone attempt to defend their viability. The Court acknowledges that the D.C. Circuit has recently expressed some concern about treating unopposed motions to dismiss as conceded, <u>see</u> <u>Cohen v. Bd. of Trs. of the Univ. of the D.C.</u>, 819 F.3d 476, 481–83 (D.C. Cir. 2016), but dismissal is warranted here. Parker—through experienced counsel—did not mistakenly fail to file an opposition altogether (or file one too late, which amounts to the same thing, <u>see</u> <u>id.</u> at 481); he filed an opposition in which he <u>chose</u> not to defend his other claims. Indeed, Parker's opposition describes his suit as having been brought under (only) Title VII and the ADEA. <u>See</u> Pl.'s Opp'n [ECF No. 15] at 3. The Court will therefore deem Parker's non-Title VII and non-ADEA claims abandoned and dismiss them. <u>Cf.</u> <u>Jackson v. Fed. Exp.</u>, 766 F.3d 189, 196 (2d Cir. 2014) ("Generally, but perhaps not always, a partial response reflects a decision by a party's attorney to pursue some claims or defenses and to abandon others.").

The far thornier issue is whether to grant the Board's motion for summary judgment on the Title VII and ADEA claims. Before turning to the heart of the summary judgment analysis, the Court must address the wrinkle added by Parker's failure to abide by the local rules of this

district.  Local Rule 7(h)—which in the past has been labeled Local Rule 108(h) and Local Rule 56.1—governs the procedure for summary judgment motions.  It first instructs a movant that a motion "shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, which shall include references to the parts of the record relied on to support the statement."  The Board filed such a statement.  See Def.'s Statement of Material Facts As To Which There Is No Genuine Issue [ECF No. 11-2] ("Def.'s Statement of Facts").  Local Rule 7(h) then places an equally important requirement on the non-movant: "An opposition to such a motion shall be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated, which shall include references to the parts of the record relied on to support the statement."  Parker—who is represented by experienced counsel, the Court again notes—failed to file such a counterstatement.  This is no small oversight, for Local Rule 7(h) proceeds to explain that in deciding whether to grant the motion, "the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."  Thus, when a non-movant like Parker fails to provide a counterstatement, the Court is almost entirely free to accept the movant's catalog of facts as undisputed.  It becomes "irrelevant at that point whether the record could have supported a finding of a genuine issue of material fact"; the Court's obligation is merely "to determine whether the [movant's] statement of undisputed material facts was adequately supported by the record."  Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner, 101 F.3d 145, 154 (D.C. Cir. 1996).  In short, not filing a statement of genuine issues is a great way for a non-movant to lose its advantages under the summary judgment standard—and with them, perhaps, the

case.  See, e.g., SEC v. Banner Fund Int'l, 211 F.3d 602, 615–16 (D.C. Cir. 2000); Jackson, 101 F.3d at 154.

Although Parker provides no explanation for his non-compliance with the local rule, the Court has a hypothesis.  Parker's memorandum in opposition calls the Board's summary judgment motion "entirely inappropriate," says that this is not the "proper time" for such a motion, and suggests that summary judgment can be granted only "after discovery."  Pl.'s Opp'n at 4–5.  Perhaps, then, Parker felt that he did not need to comply with Local Rule 7(h) because the Board's summary judgment motion was fatally premature.  If so, Parker was wrong.  There is no rule that summary judgment cannot be sought or granted before discovery.  Rule 56(b) states that unless a local rule or court order says otherwise (and neither did here), "a party may file a motion for summary judgment at any time until 30 days after the close of all discovery."  A motion for summary judgment can thus be too late, but not too early; "at any time" does in fact mean "at any time."  See, e.g., Eastland Music Grp., LLC v. Lionsgate Entm't, Inc., 707 F.3d 869, 870–71 (7th Cir. 2013); Short v. Oaks Corr. Facility, 129 F. App'x 278, 280 (6th Cir. 2005).

It's not hard to see why this is the rule.  A defendant might, at the outset of a case, already possess incontrovertible evidence that would defeat the plaintiff's claim—an evidentiary silver bullet, so to speak.  If so, efficiency counsels in favor of letting the defendant pull the summary judgment trigger immediately.  Why put parties through the burden of discovery if there's already indisputable evidence that defeats the claim?  The point, to be sure, is not that the Board necessarily possessed such potent ammunition here; it is merely that the Board was perfectly free to file its motion as early as it did.

Rule 56 instructs a party in Parker's position what to do if he believes discovery is necessary to fend off an early summary judgment motion: "show[] by affidavit or declaration that,

for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). The court may then defer consideration of the motion, deny it, let the non-movant have discovery, or take any other appropriate action. Id. But Parker also failed to file an affidavit or declaration of this sort. Like failing to comply with Local Rule 7(h), failing to comply with Rule 56(d) (formerly Rule 56(f)) is another great way to lose a claim or case. See, e.g., Cannon v. District of Columbia, 717 F.3d 200, 208 (D.C. Cir. 2013); Di Benedetto v. Pan Am World Serv., Inc., 359 F.3d 627, 629–30 (2d Cir. 2004); Strang v. U.S. Arms Control & Disarmament Agency, 864 F.2d 859, 861 (D.C. Cir. 1989).

All that said, a non-movant's procedural gaffes do not entitle the movant to summary judgment by default. Indeed, the Advisory Committee's notes make clear that "summary judgment cannot be granted by default even if there is a complete failure to respond to the motion." Fed. R. Civ. P. 56(e) advisory committee's note; see also Grimes v. District of Columbia, 794 F.3d 83, 97–98 (D.C. Cir. 2015) (Griffith, J., concurring). When a non-movant fails to supply the counterstatement required by Local Rule 7(h), a court must still ensure that the movant's statement of undisputed facts is adequately supported by the record. Jackson, 101 F.3d at 154. Even if all of the statement's facts are adequately supported by evidence in the record, the court is not compelled to accept them as undisputed if it is aware of other record evidence that reveals a factual dispute. See Burke v. Gould, 286 F.3d 513, 518 (D.C. Cir. 2002) (noting the discretionary nature of Local Rule 7(h)); see also Potter v. District of Columbia, 558 F.3d 542, 553 (D.C. Cir. 2009) (Williams, J., concurring) ("While a judge isn't a pig hunting for truffles in the parties' papers, neither is he a potted plant."). And even if the court does accept as undisputed the movant's statement of facts, it must still determine whether those facts show that the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(e)(3) advisory committee's note. Here, as the

Court will explain, notwithstanding Parker's procedural <u>faux pas</u>, the Board does not prevail, for at least one of its critical "undisputed" facts is not adequately supported, and when all justifiable inferences are drawn in Parker's favor, the Board is not entitled to judgment as a matter of law.

On to the specifics.  Parker claims that the Board withdrew his employment offer because of his race or age, in violation of Title VII or the ADEA.  The Board asserts a legitimate, non-discriminatory reason for this adverse employment action: Parker failed to accept the job on the terms offered—that is, with a start date of October 4—by the September 16 deadline the Board had set.  Under these circumstances, the summary judgment analysis reduces to "one central question": is there "sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason was not the actual reason and that the employer intentionally discriminated against the employee on the basis of race" or age?  <u>Brady v. Office of Sergeant at Arms</u>, 520 F.3d 490, 494 (D.C. Cir. 2008) (Title VII); <u>see also</u> <u>Baloch v. Kempthorne</u>, 550 F.3d 1191, 1198 (D.C. Cir. 2008) (applying <u>Brady</u> to ADEA claim).

There are a number of ways a plaintiff like Parker might try to show that an employer's stated non-discriminatory reason for an adverse employment action is a pretext for the true, impermissible reason.  Parker focuses on one of the most common: highlighting "evidence suggesting that the employer treated other employees of a different race [or age] more favorably in the same factual circumstances." <u>Brady</u>, 520 F.3d at 495.  If the record contains evidence that could lead a reasonable jury to conclude that another individual of a different race or age was similarly situated to Parker in all relevant respects but was treated more favorably, summary judgment for the Board would be inappropriate.  <u>See</u> <u>Wheeler v. Georgetown Univ. Hosp.</u>, 812 F.3d 1109, 1115–17 (D.C. Cir. 2016).  Parker says the record discloses just such a comparator: Walter Darr.  The Court agrees.

Eighteen years younger than Parker and white, Darr was one of the other two men the Board selected for mediator positions in July 2010.  Like Parker, Darr was informed of his selection on July 13.  According to Rainey, the Board's Chief of Staff, both Darr and the third selectee "were given start dates of August 2, 2010."  ROI Ex. F4, at 37; see also ROI Ex. F11b, at 133 (email to Darr flagging "August 2, 2010 start date").  The Board gave Darr until July 30 to decide whether to accept the position.  ROI Ex. F11d, at 139.  Darr spoke with Williams on July 30 and accepted the position.  ROI Ex. F11e, at 143; ROI Ex. F11i, at 156.  But—and this is critical—there is no indication that Darr agreed to the start date of August 2.  To the contrary: when Williams emailed Darr on August 3 to ask why she had not received his signed "Statement of Acceptance" (answer: a fax snafu), she also asked him to "please advise on a tentative start date."  ROI Ex. F11e, at 143. It seems clear, then, that by the July 30 deadline Darr had agreed to neither the original start date of August 2 nor any other date.  Instead, as far as the present record shows, Darr's eventual start date of October 4 was first proposed during a phone call on August 3, and Darr confirmed it in writing on August 4.  ROI Ex. F11i, at 156; ROI Ex. F11f, at 147.  The key point is this: a reasonable jury could conclude that the Board treated Darr as having accepted the job even though he did not agree to the original start date (August 2) by his acceptance deadline (July 30) and instead agreed to a later start date (October 4) after his acceptance deadline had passed.  The parallels to Parker's timeline are obvious, but the outcome is not the same.

A reasonable jury could conclude that this treatment of Parker's younger, white counterpart reveals that the Board's proffered explanation for rescinding Parker's offer was pretext.  Recall the Board's explanation: Parker failed to "accept the terms of the offer" by September 16, and instead repeated his request for a start date of November 1.  ROI Ex. F6g, at 87.  But a jury could conclude that Parker had done as much to accept the terms of the offer by his deadline as Darr had

by his.  Like Darr, Parker sent the Board a signed "Statement of Acceptance," and in fact did so

two months before his September 16 deadline.  ROI Ex. F6d, at 72.  Parker also swears that he

orally accepted the position during his September 16 phone call with Williams.  ROI Ex. F2, at

20; Pl.'s Ex. 4 [ECF No. 15-1] ¶¶ 5–6.  And Parker's email of September 17, in which he wrote,

"Per our conversation, I am looking forward to beginning my position as a Mediator (Airline) with

the agency," could also convince a jury that Parker had orally accepted the offer on September 16.

ROI Ex. F6f, at 85.  It is true that on September 16 and 17 Parker was still seeking to change his

start date, but the record does not suggest that Parker made his acceptance contingent on getting

the later start date.  He swears he didn't.  Pl.'s Ex. 4 ¶ 5.  The Board treated Darr as having properly

accepted the job even though he had not agreed to a start date by his July 30 deadline—so why

was it taboo for Parker to repeat his request for a later start date on September 17?  A reasonable

jury could conclude that race or age discrimination is the explanation.

A jury could find further support for this conclusion in another aspect of Darr's story.  On

October 1 Darr asked the Board to delay his start date by another two weeks, from October 4 to

18.  ROI Ex. F4, at 37.  Although the Board denied this request, it did not treat it as a rejection of

the Board's job offer.  Instead, the Board (through Rainey) merely warned Darr that if he did not

show up on October 4, his failure to report would be treated "as a declination of the job."  ROI

Exhibit F11h, at 154.  A reasonable jury might wonder why Parker was not similarly given a mere

warning on September 17—something like, "Your request for a November 1 start date is denied,

and failure to report on October 4 will be accepted as a declination of the job."  Why, instead, was

Parker's offer immediately revoked?  Again, a reasonable jury could find Darr's and Parker's

circumstances so similar that an inference of discrimination is warranted.

In attempting to argue that Darr and Parker were not similarly situated, the Board emphasizes that Darr, unlike Parker, accepted his position by his deadline "unconditionally." Def.'s Statement of Facts ¶ 4; <u>see also</u> Def.'s Reply [ECF No. 17] at 10 ("Darr accepted the initial offer <u>unconditionally</u> . . . on July 30, 2010."). But even assuming it would be a determinative distinction, this is the fact, adverted to earlier, that is inadequately supported by the record. For starters, what does "unconditionally" mean here? If the point is to distinguish Parker, it must mean that Darr accepted the Board's proposed start date. As the Court has already explained, however, the present record suggests Darr never accepted his position's original start date of August 2, much less accepted it by his July 30 deadline. Nor does the record suggest that by July 30 Darr said anything like, "I will take the position and will accept whatever start date the Board sets." The Court therefore does not see in what relevant sense Darr's acceptance was "unconditional." A jury could find that, by their respective deadlines, both Darr and Parker had communicated their general acceptance of the positions offered, but neither had firmly committed to a start date. In Darr's case, it seems, the Board continued to discuss the issue; in Parker's, it yanked the offer. A reasonable jury could conclude that discrimination explains the difference.

<u>CONCLUSION</u>

On the present pre-discovery record, drawing all justifiable inferences in Parker's favor, a reasonable jury could find that the Board's asserted non-discriminatory reason for withdrawing Parker's job offer was not the actual reason, and that the Board intentionally discriminated against him on the basis of race or age. The Board's motion for summary judgment will therefore be denied, and the case will proceed to discovery. The fuller record generated by discovery might show conclusively that Parker and Darr were not similarly situated, or it might strengthen the case

that they were—or it might reveal other evidence, unrelated to the specific issues addressed in this

opinion, that bolsters or undermines Parker's case.  The Court will, of course, keep an open mind.


_____/s/_____

JOHN D. BATES
United States District Judge

Dated:  <u>June 23, 2016</u>